Burke, J.
 

 Plaintiffs are the representatives of four passengers who were killed when a United Air Lines Boeing 727 jet crashed into Lake Michigan, within the territorial boundary of the State of Illinois, on August 16, 1965. In these joint appeals, the parties raise novel and interesting questions concerning the applicability of the Federal maritime law and the Illinois statutory limitation of $30,000 to these wrongful death actions.
 

 The defendant’s jet was on a regularly scheduled nonstop commercial flight originating at La Guardia Airport in Flushing, New York, and terminating at O’Hare International Airport in Chicago, Illinois. , The decedents, who are represented in this appeal, have diverse backgrounds and came to be passengers on this fateful flight for different purppses. James Thomas resided in a New Jersey suburb with his family. He was employed by a New York concern and worked in Manhattan. He was traveling to Milwaukee and was supposed to change flights in Chicago. In somewhat similar fashion, decedent Robert Zabor’s family lived in Greenwich, Connecticut. He too commuted each day to his place of employment in New York. He had purchased a round trip .ticket between New York and Chicago. Kalman Musin and Donna Rae Miller were both residents of Iowa, who left their respective families for short sojourns to New York. They had completed their visits and were returning home when the crash occurred.
 

 Separate wrongful death actions were commenced in Supreme Court, New York County. In
 
 Rarey
 
 and
 
 Harris,
 
 defendant United Air Lines moved, unsuccessfully, to dismiss the complaint or, in the alternative, for summary judgment dismissing all claims in excess of $30,000 — the limitation imposed by the Illinois wrongful death statute. In
 
 Thomas
 
 and
 
 Zabor,
 
 plain
 
 *719
 
 tiffs’ motions to dismiss the affirmative defenses alleging this same $30,000 limitation were granted.
 

 Separate appeals were taken to the Appellate Division, First Department, but common questions of law and fact caused them to be considered together. It was there held that the plaintiffs’ actions were “ controlled by principles of maritime law” and as the wrongs ‘1 fall into an area not covered by specific Federal law ’ ’ the State wherein the accident occurred had
 
 “
 
 sovereignty over deaths caused by [these] maritime torts ’ ’. It was concluded that, since
 
 ‘ ‘
 
 the act complained of, if wrongful, constitutes a maritime tort, the wrongful death statute of Illinois, under applicable Federal law, will govern the remedy.” The orders before that court were reversed respectively to limit the recovery in each action to $30,000, as required by the law of the situs of the accident, in compliance with then existing Federal law. The Appellate Division has asked us to determine whether these orders were properly reversed.
 

 Since we conclude that these actions for wrongful death — whether or not the wrong be classified as a maritime tort — are not restricted by the Illinois $30,000 limitation, we would answer each of the certified questions in the negative, thus reversing each of the orders of the Appellate Division.
 

 The first question necessarily presented by these appeals is whether these actions require the application of maritime law. In the context of this case, the issue is whether the circumstance—fortuitous though it was — that the plane crashed into navigable waters, is sufficient to place the present litigation within an area regulated by Federal rather than State law. The court below, in categorizing the acts complained of as maritime torts, followed a recent Federal decision which held that
 
 “
 
 tort claims arising out of the crash of a landbased aircraft on navigable waters within the territorial jurisdiction of a state are cognizable in admiralty.”
 
 (Weinstein
 
 v.
 
 Eastern Airlines,
 
 316 F. 2d 758, 766 [3d Cir.].) The court then applied the admiralty “ locality test ”, whereby the law of Massachusetts, the situs of the accident, was deemed to control the wrongful death action brought by the representatives of seven deceased passengers.
 

 
 *720
 
 A proper analysis of the decision in
 
 Weinstein
 
 and its successor,
 
 Scott
 
 v.
 
 Eastern Airlines
 
 (399 F. 2d 14 [3d Cir:]), requires that we first summarize the decisional law which existed prior to Weinstein, dealing with this question of maritime tort. It is not disputed that the United States Supreme Court spoke in terms sufficiently broad to sustain the Weinstein rationale as early as 1866. “ Every species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance.”
 
 (The Plymouth,
 
 3 Wall. [70 U. S.] 20, 36.) Upon closer scrutiny, it is evident that implied in this statement was the requirement that the ‘ ‘ species of tort ’ ’ have some maritime connection. (See 16 Harv. L. Rev. 210.) This was apparent in
 
 Atlantic Transp. Co.
 
 v.
 
 Imbrovek
 
 (234 U. S. 52). The argument against a broad concept of admiralty jurisdiction in that case was expressed in these terms:11 The appropriate basis * * * of all admiralty jurisdiction, whether in contract or in tort, is the
 
 maritime nature
 
 of the transaction or event ” (p. 61; italics supplied). The court found it unnecessary “ to enter upon this broad inquiry ” since the wrong before the court (an injury sustained by a stevedore while loading a ship, or, as the court described his work — in the performance of a maritime service) was held to be of a maritime nature.
 

 Thereafter, in
 
 Western Fuel Co.
 
 v.
 
 Garcia
 
 (257 U. S. 233, 242), the Supreme Court sustained admiralty jurisdiction in a wrongful death action, noting that
 
 11
 
 where death * * * results from a maritime tort committed on navigable waters within a State whose statutes give a right of action on account of death by wrongful act, the admiralty courts will entertain a libel
 
 in personam
 
 for the damages sustained ”. More recently, in
 
 The Tungus
 
 v.
 
 Skovgaard
 
 (358 U. S. 588), the Supreme Court again declared that admiralty courts had jurisdiction ovef wrongful death actions resulting from a maritime tort. In these latter cases, the Supreme Court specifically and purposively referred to the injuries as ‘ ‘ maritime torts ’ ’ which occurred on “ navigable waters ”. The inference is apparent— a maritime tort is one of a maritime nature, rather than any tort which merely occurs, or in this case, terminates, on the water.
 

 
 *721
 
 Most recently, in
 
 McGuire
 
 v.
 
 City of New York
 
 (192 F. Supp. 866 [S. D. N. Y.]), a tort action was brought in admiralty to recover for personal injuries sustained when the libelant struck a submerged object while swimming at a public beach. In concluding that the subject matter of this action was outside the jurisdiction of admiralty, the court said: “ That a tort may have occurred on navigable waters is merely a prima facie test of admiralty jurisdiction * * *. Not every tort committed on admiralty waters may be redressed in the admiralty courts. Only those which have a maritime character, which deal with a maritime subject matter, are properly within admiralty jurisdiction” (p. 870).
 
 [1]
 

 In this setting, the Third Circuit Court of Appeals was asked to determine whether an action for wrongful death lies within the admiralty jurisdiction of a court where the sole basis for invoking that jurisdiction is the fact that the wrongful act was consummated in navigable waters. In sustaining jurisdiction, the court failed to define a maritime tort or to distinguish prior cases. Instead, it was reasoned that since “ a tort claim arising out of the crash of an airplane beyond the one marine league line is within the jurisdiction of admiralty [by virtue of the Death on the High Seas Act (U. S. Code, tit. 46, § 761)1], then
 
 a fortiori
 
 a crash of an aircraft just short of that line but still within navigable waters is within that jurisdiction as well.” (316 F. 2d, at ,p. 765.) Such reasoning, plaintiffs contend, confuses the statutory creation of a remedy with the fixed concept of jurisdiction. Moreover, the argument is made that, since the only feasible way of being carried beyond the one-maritime-league restriction at the time of the statute’s enactment in March, 1920 was by ship, it may be presumed that the proponents of the act contemplated that any wrong occurring after this distance was traveled would certainly be of a maritime nature and thus within admiralty jurisdiction. Plaintiffs, therefore, assert that
 
 Weinstein
 
 was decided improperly and should not be f ollowed in the instant case. As noted, above,
 
 *722
 
 the Appellate Division refused to ignore the clear holding of that case.
 

 In reversing the Appellate Division, we do so without passing judgment on the
 
 Weinstein
 
 decision. Bather, we will adheré instead to a subsequent decision of the Third Circuit Court of Appeals which has at least modified
 
 Weinstein
 
 in such a way that its holding is no longer applicable to this case. This was accomplished in
 
 Scott
 
 v.
 
 Eastern Airlines
 
 (399 F. 2d 14,
 
 supra),
 
 another wrongful death action arising from the same crash as
 
 Weinstein.
 
 In
 
 Scott,
 
 that court first unanimously adhered to its prior decision by concluding that a wrongful death action was a maritime tort within admiralty jurisdiction. This determination precluded the court, in its opinion, from employing a choice of law approach to determine which of two wrongful death statutes controlled the action.
 
 “
 
 The maritime law will accord dependents and survivors rights of recovery neither more nor less extensive than they would enjoy under the law of the state within whose territorial waters the fatal maritime tort occurred ”
 
 (supra,
 
 p. 18).
 

 Following this decision, reargument was ordered and the case was considered by the entire Third Circuit (399 F. 2d, at p. 18). On reargument, the court reversed its earlier decision and held that the District Court properly applied the law of Pennsylvania to determine the extent of the plaintiff’s wrongful death recovery even though the airplane crashed in Massachusetts. While it is not at all apparent why the court reversed its prior decision—three opinions were required to explain the views of the four-man majority — the holding is sufficiently clear to show that even the Third Circuit would not automatically apply Illinois law in this case, despite the fact that this was the
 
 ‘
 

 [1]
 

 local law ” which allegedly governs all maritime torts.
 

 The first opinion, and purportedly the majority one, was written by Judge Staley who took the position that while this was a maritime tort within the meaning of
 
 Weinstein,
 
 nevertheless, maritime law would not require an indiscriminate application of the law of Massachusetts, the situs of the. crash. Beferring to a recent Supreme Court decision
 
 (Lauritzen
 
 v.
 
 Larsen,
 
 345 U. S. 571), as providing the proper guidance for the determination of the applicable law, he wrote ‘ ‘ we think the facts of the instant case exemplify a situation where the place
 
 *723
 
 of the wrong was quite adventitious and where .the most significant relations and contacts are with Pennsylvania [the domicile of the'decedents] He later commented: “ Admiralty courts, like state courts, have an obligation to refrain from applying a rule when its application would be ‘ inappropriate or inequitable.’ We strongly believe that it would be most inappropriate, if not inequitable, to apply the law of Massachusetts to this case simply because Eastern’s aircraft happened to crash into that state’s navigable waters.” (316 F. 2d, at pp. 28-29.)
 

 Since the Third Circuit chose to apply the law of Pennsylvania to an accident which occurred in territorial waters located in the State of Massachusetts, it is evident that we need no longer adhere to the latter part of the twofold holding of
 
 Weinstein.
 
 Thus, even if locality alone creates a maritime tort, the court is not precluded from determining which of the competing wrongful death statutes should regulate particular actions. In view of this decision, the question whether the acts complained of constitute a maritime tort is no longer dispositive of these appeals for, in accordance with
 
 Scott,
 
 the court is permitted to employ a choice of law process to determine which of the competing wrongful death statutes applies in each of these four cases.
 

 As noted above, these cases are before us on certified questions. Consequently, we must limit ourselves to a determination of whether the Appellate Division properly concluded that the Illinois wrongful death statute, with its $30,000 limitation, is applicable to each of these actions. We have already indicated that Federal law does not mandate such a result. It is also well settled by our decisional law that the fortuitous occurrence of an accident is not, of itself, a sufficient basis for applying the wrongful death statute of a particular State.
 
 (Kilberg
 
 v.
 
 Northeast Airlines,
 
 9 N Y 2d 34;
 
 Long
 
 v.
 
 Pan Amer. World Airways,
 
 16 N Y 2d 337.) Recently, the Supreme Court of Illinois also rejected the
 
 lex loci delictus
 
 doctrine. In
 
 Wartell
 
 v.
 
 Formusa
 
 (34 Ill. 2d 57) the court was asked which law would determine whether the doctrine of intra-spousal immunity would apply to an action brought by a resident of Hlinois as the result of an accident which occurred in Florida. The court replied: “Illinois has the predominant interest in
 
 *724
 
 the preservation of the husband-wife relationship of its citizens ” (p. 59). Following that decision, a United States District Court, sitting in Illinois, held that, in a wrongful death action involving residents of Illinois who were killed in a crash which occurred in Italy, the issue of damages would be determined by the law of Illinois
 
 (Manos
 
 v.
 
 Trans World Airlines,
 
 295 F. Supp. 1170). “ The predominant interests to be served on the issue of damages are those of the states containing the people or estates which will receive the recoverable damages, if any, for their injuries or their decedent’s death ” (p. 1173). It is thus apparent that Federal law, the law of this State, and the law of Illinois each reject the conclusion of the Appellate Division that the law of Illinois applies to these four actions.
 

 For all these reasons, the orders of the Appellate Division should be reversed and the questions certified answered in the negative.
 

 Chief Judge Fuld and Judges Scileppi, Bergan, Breitel, and Jasen concur.
 

 In each case: Order reversed, with costs, and case remitted to Special Term for further proceedings in accordance with the opinion herein. Question certified answered in the negative.
 

 [1]
 

 . Prior to the decision in McGuire, a leading treatise commented that “It seems to be still unsettled whether any tort whatever, occurring on navigable waters, is within [admiralty] jurisdiction.” (Gilmore
 
 &
 
 Black, Law of Admiralty [1957 ed.], §§ 1-10, p. 22, n. 78.)