**Suliao Zhou HUANG, as administratrix of the Goods, Chattels and Credits which were of Rodger Huang, a/k/a Chang Huang, a/k/a Roger Wong, deceased, and Suliao Zhou Huang, Plaintiffs,**

v.

**Frank LEE and Janny Lee, Defendants.**

**No. 89–CV–1279.**

United States District Court, E.D. New York.

April 5, 1990.

Stanley J. Kaufman, Brooklyn, N.Y., for plaintiffs.

Callan, Regenstreich & Koster, New York City (Warren S. Koster, of counsel), for defendants.

## MEMORANDUM–DECISION AND ORDER

BARTELS, District Judge.

## INTRODUCTION

Suliao Zhou Huang, ("Plaintiff"), a New York domiciliary and administratrix of the

estate of her son, Rodger Huang ("Huang"), sues for her son's conscious pain and suffering and wrongful death arising out of two causes of action based upon an unfortunate incident which occurred at the New Jersey home of Frank and Janny Lee (the "Defendants"). The event occurred sometime between the evening of December 30, 1987, and the early morning hours of December 31, 1987. Huang had accepted an invitation from his uncle, Frank Lee, to spend the night at the Lee's home in Closter, New Jersey. Due to the crowded conditions, Huang, along with other guests, slept on the floor, near the heater, in the living room. On the morning of the 31st, the Defendants awoke to a malodorous smell and discovered Huang, unconscious, lying on the living room floor. The local police were summoned and pronounced Huang dead. According to the autopsy findings, Huang succumbed as a result of carbon monoxide intoxication. At the time of his death, Huang, a college student, lived in New York with his parents.

Defendants move for a pre-trial ruling regarding two choice-of-law questions. Specifically, the Court is asked to determine, in this multistate tort action, whether (a) New York or New Jersey standard of care governs the issue of liability where a guest from New York is injured at the home of a New Jersey domiciliary; and (b) New York or New Jersey law determines the damages permissible in a wrongful death action brought by a New York domiciliary on behalf of the estate of her child.

## DISCUSSION

### A. LIABILITY FOR PAIN AND SUFFERING

■ Different standards of care have been adopted by New York and New Jersey with respect to the duty of care an occupier of land owes to third persons coming thereon. New Jersey continues to adhere to the traditional common law view that the duty is determined according to the status of such third persons, i.e., invitee, licensee, or trespasser. *Snyder v. I. Jay Realty Co.*, 30 N.J. 303, 311–312, 153 A.2d 1 (1959).[1] New York, on the other hand, abandoned this approach and instead adopted a rule whereby the land owner's conduct is governed by a single standard of reasonable care.[2] *Basso v. Miller*, 40 N.Y.2d 233, 240, 386 N.Y.S.2d 564, 352 N.E.2d 868 (1976).

Historically, New York[3] resolved choice-of-law conflicts in multistate tort actions by applying the law of the place of the wrong; in other words, the immutable principle of *lex loci delicti* governed. This remains the general rule today unless extraordinary circumstances exist. *Zangiacomi v. Saunders*, 714 F.Supp. 658, 662 (S.D.N.Y.1989); *Kohn v. United States*, 591 F.Supp. 568, 572 (E.D.N.Y.1984), *aff'd*, 760 F.2d 253 (2d Cir.1985); *Cooperman v. Sunmark Industries Division of Sun Oil Co. of Pa.*, 529 F.Supp. 365, 368 (S.D.N.Y.1981); *Cousins v. Instrument Flyers, Inc.*, 44 N.Y.2d 698, 405 N.Y.S.2d 441, 442, 376 N.E.2d 914, 915 (1978); *Rakaric v. Croation Cultural Club*, 76 A.D.2d 619, 430 N.Y.S.2d 829, 835 (2d Dept.1980). New Jersey law would apply under *lex loci delicti* since Huang's injuries occurred at the Defendants' New Jersey home.

This determination may be changed if extraordinary circumstances, i.e. the place of the wrong is merely fortuitous or New York residents require protection from unfair and anachronistic treatment, warrant application of another jurisdiction's law. *Babcock v. Jackson*, 12 N.Y.2d 473, 240

---

**1.** New Jersey continues to follow this approach because it lends a reasonable degree of predictability to this area of the law. *Snyder*, 30 N.J. at 311–312, 153 A.2d 1.

**2.** The court reasoned that the traditional common law approach, unlike the single standard, hindered the administration of justice in a society that long ago eschewed feudalism. *Basso*, 40 N.Y.2d at 240, 386 N.Y.S.2d 564, 352 N.E.2d 868.

**3.** It is well settled that in a diversity action such as this the Court must look to the choice of law rules of the forum state. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

N.Y.S.2d 743, 748, 191 N.E.2d 279, 282 (1963); *Zangiacomi*, 714 F.Supp. at 662.

To determine whether or not the situs of the injury was fortuitous, New York courts have "[t]raditionally . . . distinguished fixed location from transient (fortuitous) cases . . . and in fixed cases, they often place greater emphasis on the law of the situs of the tort." *Zangiacomi*, 714 F.Supp. at 662 (citations omitted). This is not a case in which the place of the wrong is purely fortuitous. Unlike the airplane or automobile passenger, whose relationship with the state in which the injury occurs may be very tenuous, Huang, sleeping bag in tow, crossed the Hudson River, into New Jersey, for the specific purpose of spending the night at the Defendants' home. He had a very direct and substantial nexus with New Jersey. Factual similarities appear in this case and *Zangiacomi* (New York resident injured while working in Connecticut—Connecticut law applied to determine homeowner's liability), and *Gray v. Busch Entertainment Corp.*, 886 F.2d 14 (2d Cir.1989) (vacationing New York resident injured at amusement park in Virginia—Virginia contributory negligence standard applied), wherein the court held that the injured party's presence in the state at the time of the accident was not fortuitous.

Nor is the Court presented with a scenario in which a New York resident needs protection from unfair or anachronistic treatment. *Zangiacomi*, 714 F.Supp. at 662 (*citing Babcock*, 12 N.Y.2d 473, 240 N.Y.S.2d at 748, 191 N.E.2d at 282; *Gray*, 886 F.2d at 16.) In *Gray*, the Second Circuit found that applying Virginia's law to a New York resident-plaintiff was neither unfair nor anachronistic, despite the fact that under Virginia's contributory negligence rule[4] the plaintiff might be denied recovery. While the standards of care differ in this case, and New York's rule may arguably be more Plaintiff oriented, application of New Jersey's law neither bars the cause of action nor does it preordain a verdict in favor of the Defendants. Consequently,

the result would not be unfair or anachronistic. *Zangiacomi*, 714 F.Supp. at 663. Since the place of the injury was not fortuitous and the application of New Jersey's law would be neither unfair nor anachronistic, it would be unjustified to depart from the rule of *lex loci* and impose New York's standard of care.

Realizing that the indiscriminate application of *lex loci* could result in harsh and illogical results New York adopted interest analysis as an alternative means to resolve choice-of-law problems. *Babcock*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279. Under interest analysis "controlling effect [is given] to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation." *Id.* 240 N.Y. S.2d at 749, 191 N.E.2d at 283. Assuming this Court found that extraordinary circumstances were present and applied interest analysis, it would inexorably reach the same conclusion—New Jersey law would govern.

While it has not always been easy to determine which jurisdiction has the greatest interest, certain principles have been established which enable the Court to reach a conclusion. For instance, in tort cases, "the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." *Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 195, 491 N.Y.S.2d 90, 95, 480 N.E.2d 679, 684 (1985). Furthermore, "the relative interests of the domicile and the locus jurisdictions in having their laws apply will depend on the particular tort issue in conflict" . . . and when the rules involve standards of conduct[5] "the law of the place of the tort 'will usually have a *predominant,* if not *exclusive* concern'". *Id.* (emphasis added) (*quoting Babcock*, 12 N.Y.2d at 483, 240 N.Y.S.2d at 750, 191 N.E.2d at 284); *Murphy v. Acme Markets, Inc.*, 650 F.Supp. 51, 53 (E.D.N.Y.1986); *Cameron v. G & H*

4. New York on the other hand employed a comparative negligence analysis.

5. Although the Court of Appeals has not specifically delineated which rules are conduct-regu-

lating, this Court unhesitatingly places standard of care rules in that category.

*Steel Serv. Inc.,* 494 F.Supp. 171, 173 (E.D.N.Y.1980). *See generally* Restatement (Second) of Conflict of Laws § 145 comment d, at 417–418 (1971) ("subject to only rare exceptions, the local law of the state where the conduct and injury occurred will be applied to determine whether the actor satisfied minimum standards of acceptable conduct").

This case presents the paradigm situation for application of New Jersey's law since (1) New Jersey is the situs of the alleged wrongful acts; and (2) New Jersey has the predominant interest in regulating the conduct of its property owners, and its law should govern where the issue is the liability of a New Jersey landowner with respect to injuries sustained by third persons on his property.

Plaintiff argues[6] that a house guest's luggage also carries with it his domiciliary state's standard of care. If this were so, the Defendants could be subject to numerous different standards of care. At the same time such a theory would undermine "the locus jurisdiction's interests in protecting the reasonable expectations of the parties who relied on it to govern their primary conduct." *Schultz,* 65 N.Y.2d at 198, 491 N.Y.S.2d at 96, 480 N.E.2d at 684–85. Under Plaintiff's formulation, the Defendants would have to familiarize themselves with the standards of care of each of their guests domiciles and adjust their conduct accordingly. The Court rejects such a theory. It also rejects Plaintiff's contention that New York law should govern because it establishes a higher standard of conduct, thereby affording greater protection to New York residents who visit other states, such as Huang. "By entering the state or nation, the visitor expose[s] himself to the risks of the territory and should not expect to subject persons living there to a hazard that their law ha[s] not created." D.F.

Cavers, *The Choice–Of–Law Process* (1965).

## B. WRONGFUL DEATH

■ It seems only logical that the Court predicate its decision with respect to the measure of damages in a wrongful death action upon interest analysis. The Court so reasons because while a conduct regulating rule, such as the standard of care, has a very obvious link to the *lex loci,* the question of the measure of damages has a rather attenuated bond with the site of the injury. The reason for this is the dominant contacts of the decedent's beneficiaries with their domicile.

In this case the conflict arises because New Jersey has expanded the scope of permissible recovery in wrongful death cases beyond the limits that New York recognizes. The difference is in the measure of damages. While both states provide compensation for pecuniary injuries resulting from the decedent's death, N.Y. Est.Powers & Trusts Law § 5–4.3(a) (McKinney 1981) and N.J.S.A. 2A: 31–1 *et seq.,* only New Jersey permits juries, under appropriate circumstances, "to award damages for the parents' loss of their child's companionship." *Green v. Bittner,* 85 N.J.1, 424 A.2d 210, 211 (1980).

Under interest analysis, "where the sole issue at bar is the measure of plaintiff's damages—the court must apply the law of the place which has the dominant contacts with the parties and transaction and the superior claim for application of its law." *Babcock,* 12 N.Y.2d at 483, 240 N.Y.S.2d at 750, 191 N.E.2d at 284; *Gordon v. Eastern Air Lines, Inc.,* 391 F.Supp. 31, 33 (S.D.N.Y.1975)

Initially, the Court notes that "[t]he predominant interests to be served on the issue of damages are those of the states containing the people or estates which will receive the recoverable damages, if any,

6. Plaintiff did not argue that New York has a strong public policy interest in applying its own standard of care. The Court, in any event, seriously questions whether Plaintiff would have been able to satisfy the " 'heavy burden' of showing 'that to enforce the foreign law would violate some fundamental principle of justice, some prevalent conception of good morals, [or] some deep-rooted tradition of the common weal' as expressed in New York's Constitution, statutes and judicial decisions." *Bader by Bader v. Purdom,* 841 F.2d 38, 40 (2d Cir.1988) (quoting *Schultz,* 65 N.Y.2d at 202, 491 N.Y.S.2d at 99, 480 N.E.2d at 688).

for their injuries." *Manos v. Trans World Airlines, Inc.*, 295 F.Supp. 1170, 1173 (N.D. Ill.1969), (*quoted with approval, Thomas v. United Airlines, Inc.*, 24 N.Y.2d 714, 724, 301 N.Y.S.2d 973, 979, 249 N.E.2d 755, 759 (1969). In *Gordon*, plaintiff's decedent, a New York domiciliary, died in an airplane crash in Florida. The court was asked to decide whether Florida or New York law applied with respect to the issue of damages. As in the instant case, both states provided the traditional award for damages for pure pecuniary loss but only Florida provided damages for grief, mental anguish and loss of companionship. After analyzing the Florida and New York contacts the court applied New York's wrongful death statute. The significant contacts were (1) plaintiff's decedent was domiciled in New York at the time of his death and his estate proceeding was pending in New York; and (2) decedent's widow—the plaintiff—was a New York resident. The Florida contacts—the situs of the accident and the defendant's principal place of business—were insignificant. *Id.*

The parallels to the instant action, with one exception,[7] are obvious. At the time of his death Huang was a New York resident and his estate will be probated in New York. Furthermore, the Plaintiff, Huang's mother, was, at the time the action was commenced, and still is a New York resident. The fact that the Defendants are New Jersey domiciliaries is not controlling.

With respect to New Jersey's interest, the *Green* court said it was "to give juries in wrongful death cases involving children the same ability to do justice to their parents, within the limits of existing legislation, as they now have under our cases when children lose a parent." *Green*, 424 A.2d at 211. Implied in Judge Wilentz' holding is that New Jersey parents will be compensated for the loss of their childrens' companionship. Under these circumstances "[New Jersey] ... could have no inter-

est whatsoever in how much money a New York jury would award a New York resident in a New York court." *Gordon*, 391 F.Supp. at 33.

New York has an interest in protecting its own residents, whenever possible, "'against' the 'unfairness'—if any—of 'anachronistic' foreign laws and from the denial of recovery under such laws." *Gordon*, 391 F.Supp. at 34 (citations omitted). In this instance, application of New York's law will not result in an anomalous outcome since "New York in [its] wrongful death statute[ ] provide[s] full and adequate compensation for the beneficiaries of decedents." *O'Rourke v. Eastern Air Lines*, 730 F.2d 842, 850 (2d Cir.1984). Furthermore, "[i]t is not New York's policy to *enhance* the recovery of its residents by the application of more favorable foreign rule." *Gordon*, 391 F.Supp. at 34 (citations omitted) (emphasis in the original).

Finally, in resolving this conflict the Court does not lose sight of the fact that it must "determine what law New York Courts would apply in the situation rather than a rule we might think better or wiser." *O'Rourke*, 730 F.2d at 842 (quoting *Hausman v. Buckley*, 299 F.2d 696, 704–705 (2d Cir.), *cert. denied*, 369 U.S. 885, 82 S.Ct. 1157, 8 L.Ed.2d 286 (1962). The Court is guided by the fact that "[e]ver since the wrongful death statute was first enacted in 1847, [it has been] strictly construed to exclude recovery for grief, loss of affection and fellowship, and loss of consortium."[8] *Garland v. Herrin*, 724 F.2d 16, 20 (2d Cir.1983); *Liff v. Schildkrout*, 49 N.Y.2d 622, 634, 427 N.Y.S.2d 746, 750, 404 N.E.2d 1288, 1292 (1980); *Bumpurs v. New York City Housing Auth.*, 139 A.D.2d 438, 527 N.Y.S.2d 217 (A.D. 1 Dep't 1988); *Wall v. Wanser*, 24 Misc.2d 132, 203 N.Y.S.2d 938 (1960) (limitation applies to parents' recovery for loss of their child's companionship). Obviously New York has a "strong public policy to 'specifically [limit] recovery

---

**7.** The Court did state that it was a "purely adventitious circumstance" that the accident occurred in Florida. *Gordon*, 391 F.Supp. 31, 33 (S.D.N.Y.1975).

**8.** The Court is not unaware that this restrictive approach has been criticized as well. *See For-*

*naro v. Jill Bros.*, 42 Misc.2d 1031, 249 N.Y.S.2d 833 (Sup.Ct.1964), *rev'd on other grounds*, 22 A.D.2d 695, 253 N.Y.S.2d 771 (1964); *Gray v. Schwartz*, 72 Misc.2d 332, 339 N.Y.S.2d 39 (Sup. Ct.1972).

in wrongful death actions to pecuniary damages resulting from decedent's death.'" *O'Rourke*, 730 F.2d at 850 (*quoting Garland*, 724 F.2d at 20).

Coupling the fact that New Jersey has at best a minimal interest in applying its law to the question of damages with the fact that New York has the predominant interest since it is the state wherein Huang's beneficiaries reside, the Court holds that New York's wrongful death statute governs.

### CONCLUSION

For the aforementioned reasons, New Jersey law with respect to the standard of care and New York law with respect to the wrongful death statute shall govern in this case.[9]

SO ORDERED.

---

**9.** The laws of different states may apply to different issues in a case involving multistate torts. "[T]here is no reason why all issues arising out of a tort claim must be resolved by reference to the law of the same jurisdiction." *Lund's Inc. v.* *Chemical Bank,* 870 F.2d 840 (2d Cir.1989) (quoting *Babcock,* 12 N.Y.2d 473, 240 N.Y.S.2d at 752, 191 N.E.2d at 285; *Pan American World Airways, Inc. v. Boeing Co.,* 500 F.Supp. 656 (S.D.N.Y.1980).