OPINION OF THE COURT
William E. Sherwood, J.
In this action to recover damages due to personal injuries sustained in a motor vehicle accident, defendants move for partial summary judgment dismissing the complaint as to plaintiffs who are residents of the Province of Quebec on the *49 ground that, under choice of law principles, the law of the Province of Quebec bars the action against the defendant Dadie Francois, also a Quebec resident, and defendant Via Route, Inc., a Canadian corporation which does not maintain offices or do business in New York. Plaintiffs Chela Jean, Trisha Elie, Maroussia Elie, and Shany Elie (hereinafter the Canadian plaintiffs) cross-move for an order pursuant to CPLR 3211 (b) dismissing the sixth affirmative defense stated in the answer that the law of the Province of Quebec bars the action.
On July 3, 1992, plaintiff Chela Jean rented an automobile in Anjou, Quebec, from defendant Via Route, Inc., a Canadian corporation which does not maintain offices or do business in New York. Defendant Dadie Francois, a Quebec domiciliary, was listed on the rental agreement as an authorized driver. Chela Jean rented the automobile to travel to Spring Valley, New York, to visit family members. Plaintiffs Nadyne Jean, Handyna Thezan and Giron Jean, New York residents, were passengers returning home. Chela Jean was to return the vehicle at a Quebec location on July 6, 1992.
The accident occurred on July 4, 1992 at 4:30 a.m. on the New York State Thruway in the Town of Cornwall, New York. Francois, who was driving, apparently fell asleep at the wheel and the automobile went off the highway, allegedly causing injury to its occupants.
Defendants claim that the action of the Canadian plaintiffs must be dismissed since, they contend, Quebec law precludes an action between Quebec residents for compensation for personal injuries arising from an automobile accident.
Under the law of the Province of Quebec (RSQ ch A-25 [Automobile Insurance Act]) a Quebec resident physically injured in an automobile accident occurring either in that province or elsewhere is entitled to no-fault benefits from the Societé de l’assurance automobile du Quebec (Quebec Automobile Insurance Board). The Automobile Insurance Act (id.), which establishes Quebec’s no-fault scheme, provides that "[compensation under this title stands in lieu of all rights and remedies by reason of bodily injury and no action in that respect shall be admitted before any court of justice” (§ 83.57). The Act further provides, however, that "[a] person entitled to compensation under this title by reason of an accident that occurred outside Quebec may benefit by the compensation while retaining his remedy with respect to any compensation in excess thereof under the law of the place where the accident occurred” (§ 83.59). Pursuant to Quebec decisional law, section *50 83.59 applies only when the accident occurs outside Quebec and when a tort action is maintained outside the province (see, Szeto c La Fédération Compagnie d’Assurances, RJQ 218 [1986], affg Szeto c Ear, CS 927 [1983]). Quebec law, the Canadian plaintiffs argue, refers back in this situation to the law of the place where the accident occurred. While New York courts generally disfavor the renvoi doctrine and do not refer to the choice of law provisions of other jurisdictions (see, e.g., Rescildo v R.H. Macy’s, 187 AD2d 112), this statute does not, strictly speaking, contain a choice of law provision but merely allows the Quebec accident victim to obtain compensation pursuant to that province’s no-fault scheme while the Quebec victim pursues any remedy in excess of the compensation provided pursuant to the law of the place where the accident occurred, which would include that jurisdiction’s choice of law provisions.
Resolution of a choice of law issue in tort cases involves the "grouping of contacts” or "center of gravity” approach (see, Miller v Miller, 22 NY2d 12, 15; Babcock v Jackson, 12 NY2d 473). For present purposes, the court will disregard the fact that some of the plaintiffs are New Yorkers since such an approach seems preferred (compare, Nevader v Deyo, 111 AD2d 548; Blais v Deyo, 97 AD2d 613; Blais v Deyo, 92 AD2d 998, affd 60 NY2d 679), and no one urges on the present motion that the action should be dismissed as to them.
In Cooney v Osgood Mach. (81 NY2d 66) Chief Judge Kaye reviewed the history of New York’s treatment of conflict of laws issues since Babcock v Jackson (supra). Chief Judge Kaye, after discussing the history of the abandonment of a rigid application of the lex loci delicti rule, stated, for a unanimous court: "An immediate distinction was drawn [after the adoption of an interest analysis approach] between laws that regulate primary conduct (such as standards of care) and those that allocate losses after the tort occurs (such as vicarious liability rules). If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders. But if competing 'post event remedial rules’ are at stake other factors are taken into consideration, chiefly the parties’ domiciles” (81 NY2d, supra, at 72 [citations omitted; emphasis added]).
Chief Judge Kaye then noted that the Neumeier rules (see, Neumeier v Kuehner, 31 NY2d 121), although drafted in terms of guest/host statutes, "could, in appropriate cases apply as *51 well to the other loss allocation conflicts” (81 NY2d, supra, at 73).
In the case at bar, the issue is not a conflict between laws that regulate primary care; presumably in Quebec it is as negligent to fall asleep at the wheel of an automobile as it is in New York. Rather, the issue is one of loss allocation; should Quebec’s no-fault scheme for compensating accident victims or New York’s law allowing an unlimited recovery subject to New York’s no-fault law prevail?
Under the first Neumeier rule, when the tortfeasor and the victim share a common domicile, the law of the domiciliary jurisdiction should control. "The domiciliary jurisdiction, which has weighed the competing considerations underlying the loss allocation rule at issue, has the greater 'interest in enforcing the decision of both parties to accept both the benefits and the burdens of identifying with that jurisdiction and to submit themselves to its authority’ ” (Cooney v Osgood Mach., 81 NY2d supra, at 73, quoting Schultz v Boy Scouts, 65 NY2d 189, 198).
The presumption in this situation is, then, that Quebec law should apply.
The Canadian plaintiffs argue that the public policy of this State, as expressed through the New York State Legislature by enacting article 51 of the Insurance Law, is that persons injured in an automobile accident within this State should have a right to bring a tort action if they have sustained a "serious injury” as defined in Insurance Law § 5102 (d). However, "not every difference between foreign and New York law threatens our public policy * * * [i]n view of modern choice of law doctrine, resort to the public policy exception should be reserved for those foreign laws that are truly obnoxious” (Cooney v Osgood Mach., 81 NY2d, supra, at 79).
The court cannot find that Quebec’s scheme for automobile victims compensation is "truly obnoxious” or even merely "obnoxious”. Although the scheme removes the issue of compensation from the court system, the court has no basis to find that it does not adequately compensate such victims and, in fact, no one so suggests. As the Appellate Division, Second Department, stated in Manaster v Northstar Tours (193 AD2d 651), the Canadian plaintiffs "will be in the exact same position as any other resident of Quebec who suffers personal injury as a *52 result of an automobile accident, no better or worse than any of [their] fellow Quebecois.” (Supra, at 652.)
Accordingly, the motion will be granted and the cross motion will be denied.