[813 NYS2d 448]

JODY KING, Appellant, v CAR RENTALS, INC., et al., Respondents.

Second Department, March 28, 2006

**APPEARANCES OF COUNSEL**

*DiJoseph & Portegello, P.C.,* New York City (*Arnold E. DiJoseph III* of counsel), for appellant.

*Morenus Conway Goren & Brandman,* Melville (*Eileen M. Baumgartner* of counsel), for Car Rentals, Inc., and another, respondents.

*Faust Goetz Schenker & Blee, LLP,* New York City (*Mary J. Joseph* and *Lisa R. Kramer* of counsel), for Syed Ali, respondent.

**OPINION OF THE COURT**

SPOLZINO, J.

On December 28, 1998, the defendant Syed Ali rented an automobile in Piscataway, New Jersey, from the defendant Car Rentals, Inc. (hereinafter Car Rentals), a New Jersey corporation that does business solely in New Jersey as a licensee of the defendant Avis Rent A Car (hereinafter Avis). Avis is a Delaware corporation that has substantial business activity in New York. Ali had just moved out of his sister's apartment in Manhattan, where he had been living for six months after graduating from New York University (hereinafter NYU) while waiting for his employment to commence, in Manhattan, in January 1999. He moved into his parents' home in Metuchen, New Jersey, where he had grown up. Ali's intent, as unequivocally expressed in his deposition testimony, was to move back to New York City after training, in Chicago, for his new employment in Manhattan. In fact, he returned to live in Manhattan in April 1999, four months after the subject accident and two months after he returned from his training.

Ali drove to Connecticut, where he picked up the plaintiff, whom he had met while both were students at NYU. The plaintiff, who was employed at the time as a teacher at a Connecticut private school, resided in both Kings Park, New York, and Hamden, Connecticut. The two drove to Canada for the New Year's weekend. On the return trip, on January 3, 1999, while traveling south on Route 133 in the City of St. Pierre de Veronne, outside of Montreal, in the Province of Quebec, Canada, the vehicle left the roadway and turned over in a ditch, allegedly injuring the plaintiff.

.

The issue presented on this appeal is what law applies to the plaintiff's New York action to recover damages for his personal injuries. New York law provides that a plaintiff who is seriously injured in an automobile accident may recover damages for noneconomic loss (*see* Insurance Law § 5104 [a]) and that the owner of a vehicle used or operated in New York that was the cause of the plaintiff's injuries is vicariously liable for such damages (*see* Vehicle and Traffic Law § 388).[1] Under New Jersey law, noneconomic loss may be recovered in circumstances similar, although not identical, to those in which such damages may be recovered in New York (*see* NJ Stat Ann § 39:6A-8; *DiProspero v Penn*, 183 NJ 477, 481, 488-489, 874 A2d 1039, 1041-1042, 1046 [2005]),[2] but the vehicle owner is vicariously liable only if the driver was the employee or agent of the owner (*see* *Haggerty v Cedeno*, 279 NJ Super 607, 609, 653 A2d 1166, 1167 [1995]). The Quebec Automobile Insurance Act provides for vicarious liability of the vehicle owner (*see* RSQ, ch A-25, § 108), but does not permit recovery of noneconomic damages (*see* RSQ, ch A-25, § 83.57; *Bodea v TransNat Express*, 286 AD2d 5, 8 [2001]; *LaForge v Normandin*, 158 AD2d 990 [1990]; *Thomas v Hanmer*, 109 AD2d 80, 81 [1985]; *Jean v Francois*, 168 Misc 2d 48, 49-50 [1996]). In order to resolve this issue, we must first address the domiciles of the parties and the scope of New York's vicarious liability law and then balance the parties' contacts with Quebec, New York, and New Jersey and the respective interests of those jurisdictions in the application of their law to this controversy.

---

**1.** The limitations on such liability imposed by 49 USC § 30106 are not applicable here since the "harm that is the subject of the action" occurred before August 10, 2005 (*see* 49 USC § 30106 [c]).

**2.** Although recovery of noneconomic damages is permitted by both New York law and New Jersey law in the case of "serious injury," the states' respective definitions of "serious injury" are not identical. Under New Jersey law, recovery is limited to six categories of serious injuries, defined as "death; dismemberment; significant disfigurement or significant scarring; displaced fractures; loss of a fetus; or a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement. An injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment" (NJ Stat Ann § 39:6A-8 [a]), unless an insured opts for broader coverage. The plaintiff's injuries, as alleged in his bills of particulars, consist of "[l]eft distal third humeral shaft holstein-lewis (spiral) fracture" and "[l]eft humerus open reduction and internal fixation." Such injuries would constitute a "serious injury" in New York (*see* Insurance Law § 5102 [d]; *Lesane v Tejada*, 15 AD3d 358 [2005]). There is nothing in the record from which it could be concluded that the same result would be had in New Jersey.

After the plaintiff moved for summary judgment on the issue of liability, Car Rentals and Avis cross-moved for summary judgment dismissing the complaint insofar as asserted against them on the ground that New Jersey law applies and does not permit the plaintiff's vicarious liability claim against them. Ali then cross-moved for summary judgment dismissing the complaint insofar as asserted against him on the ground that the law of Quebec applies and bars the plaintiff's claim for noneconomic damages. The Supreme Court held that Quebec law applies and granted Ali's cross motion, denying the plaintiff's motion as academic. The order also, effectively, denied as academic the cross motion of Car Rentals and Avis, at least to the extent that the motion sought the application of New Jersey law.

Since *Babcock v Jackson* (12 NY2d 473 [1963]), New York has been committed to addressing choice of law issues through a "center of gravity" or "grouping of contacts" approach, under which "[j]ustice, fairness and 'the best practical result' may best be achieved by giving controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation" (*id.* at 481 [citation omitted]). *Babcock*, like this case, involved a weekend trip to Canada, in that case the Province of Ontario, that ended with a one-car accident in that locale, injuring a New York resident. Rejecting the strict rule of lex loci delicti, which had theretofore prevailed, the court declined to apply Ontario's guest statute, which precluded recovery by a passenger against the vehicle's driver and, instead, applied New York law, reasoning that "it is New York, the place where the parties resided, where their guest-host relationship arose and where the trip began and was to end, rather than Ontario, the place of the fortuitous occurrence of the accident, which has the dominant contacts and the superior claim for application of its law" (*Babcock v Jackson, supra* at 483).

The Supreme Court applied Quebec law to the controversy here, based upon what it perceived to be a requirement that the choice of law rules enunciated by the Court of Appeals subsequent to *Babcock*, in *Neumeier v Kuehner* (31 NY2d 121 [1972]), be strictly applied. The *Neumeier* rules, originally articulated by Chief Judge Fuld, the author of *Babcock*, in his concurrence in *Tooker v Lopez* (24 NY2d 569, 583 [1969]), were intended to provide a "set of basic principles" developed "in order to assure a greater degree of predictability and uniformity" (*Neumeier v*

*Kuehner, supra* at 127) than had been available since New York's choice of law firmament had been shattered by *Babcock*.

Although *Tooker* and *Neumeier* were both guest statute cases, their principles have since been extended beyond that context and now govern the choice among conflicting "[l]oss allocating rules" (*Padula v Lilarn Props. Corp.*, 84 NY2d 519, 522 [1994]; *see Cooney v Osgood Mach.*, 81 NY2d 66, 73 [1993]; *see Schultz v Boy Scouts of Am.*, 65 NY2d 189, 199 [1985]). "Loss allocating rules" are laws that "prohibit, assign, or limit liability after the tort occurs" (*Padula v Lilarn Props. Corp., supra* at 522). A restriction on the nature of damages that may be recovered is a "loss allocating" rule (*Bodea v TransNat Express, supra* at 9; *see Mensah v Moxley*, 235 AD2d 910, 911 [1997]), as is a law that governs vicarious liability (*see Schultz v Boy Scouts of Am., supra* at 198; *Janssen v Ryder Truck Rental*, 246 AD2d 364 [1998]; *Aboud v Budget Rent A Car Corp.*, 29 F Supp 2d 178 [SD NY 1998]; *Heisler v Toyota Motor Credit Corp.*, 884 F Supp 128, 131 [SD NY 1995]).

The Supreme Court viewed this matter as being controlled by the third *Neumeier* rule. The first *Neumeier* rule was rejected on the basis of the Supreme Court's finding that the plaintiff was a domiciliary of New York and Ali was a domiciliary of New Jersey at the time of the accident and because the vehicle was registered in New Jersey. The Supreme Court refused to apply the second *Neumeier* rule because none of the parties resided in Quebec, where the accident occurred. Applying the third *Neumeier* rule, the Supreme Court found no reason to deviate from the default—the jurisdiction where the accident occurred—and on that basis applied Quebec law, dismissing the complaint pursuant to Quebec's prohibition on recovery of noneconomic damages.

Although the Supreme Court correctly held that the determination in this case was governed by the third *Neumeier* rule, it erred in concluding that Quebec law should apply. Contrary to the Supreme Court's determination, Ali's temporary relocation to his childhood home did not make that residence his domicile in the face of clear evidence of his intent to continue to live in New York. Nevertheless, Car Rentals' domicile in New Jersey precludes the application of the first *Neumeier* rule. The third *Neumeier* rule, while applicable, is not absolute, requiring that the default, the law of the jurisdiction in which the accident occurred, yield where to do so "will advance the relevant substantive law purposes without impairing the smooth working of the

multi-state system or producing great uncertainty for litigants" (*Neumeier v Kuehner, supra* at 128). We conclude that Quebec's limited contacts with the parties require that its law yield here, and, after considering the respective interests of New York and New Jersey, hold that the law of New Jersey shall govern this controversy.

The plaintiff is unquestionably a domiciliary of the State of New York. His deposition testimony, that he was born in New York and resided there, in his mother's home in Kings Park, until September 2001, was undisputed. At the time of the accident he had a New York driver's license. While it is true that Ali picked him up in Connecticut for the trip and was returning him to Connecticut when the accident occurred, the plaintiff's residence in Hamden, Connecticut, where he had been employed since September 1998 as a teacher, does not require a different conclusion.

Residence means living in a particular place; domicile means "living in that locality with intent to make it a fixed and permanent home" (*Matter of Newcomb*, 192 NY 238, 250 [1908]) or, as it has more recently been put, "one's principal and permanent place of residence where one always intends to return to from wherever one may be temporarily located" (*Laufer v Hauge*, 140 AD2d 671, 672 [1988]; *see* SCPA 103 [15]; *Rosenzweig v Glen's Truck Serv.*, 136 AD2d 689 [1988]). A party may thus have more than one residence, but only one domicile (*see Kleinrock v Nantex Mfg. Co.*, 201 App Div 236, 237 [1922]). Measured against this standard, the plaintiff's deposition testimony was sufficient to establish his New York domicile. There is nothing in the record to establish to the contrary that his Connecticut residence had become his domicile.

Determining Ali's domicile is not as simple. Ali grew up in Metuchen, New Jersey, and resided there, in his parents' home, until he left to attend NYU, in Manhattan, in November 1994. There is no dispute that Ali was again living at his parents' New Jersey home at the time of the accident, having moved to that residence some time in December 1998, within a month before the accident. It is also undisputed that at that time Ali had the same New Jersey driver's license that he had had since he was first licensed to drive, which listed his parents' home as his address, and that he was registered to vote at that address, as he had been since he was 18 years of age.

Nevertheless, despite his New Jersey residence at the time of the accident, the facts here establish that Ali was a New York

domiciliary at that time. Ali's original domicile was in New Jersey and his residence in New York as a student was not sufficient to change that (*see Matter of Seitelman v Lavine*, 36 NY2d 165, 171 [1975]; *Ledwith v Sears, Roebuck & Co.*, 231 AD2d 17, 22 [1997]; *Porcello v Brackett*, 85 AD2d 917 [1981], *affd* 57 NY2d 962, 964 [1982]). Nevertheless, the fact that Ali resided in New York initially as a student does not preclude finding a change of domicile on the basis of other facts (*see Matter of Goodman [Bainton]*, 146 NY 284, 287 [1895]).

Ali's student residency in New York is not the whole story. Rather than return to New Jersey after graduation, he continued to live and work in New York. Immediately after his graduation from NYU in June 1998, while waiting for his employment with a Manhattan company to commence in January 1999, Ali worked for a temporary employment agency at several locations in Manhattan. During that period, Ali resided with his sister in an apartment on 26th Street in Manhattan, sharing rent and other expenses.

When he did leave New York, moreover, a few weeks before the accident, he did so not with an intent to live permanently in New Jersey, but intending to return to New York to live in a few months, once his training was concluded and his employment had begun in New York. In fact, he planned that upon his return from the employment training in Chicago that he was to commence in January 1999, he would return to Manhattan to find a place to live. In April 1999, three months after the accident, and one month after his employment training had concluded, Ali moved to an apartment in Manhattan. Critically, he testified at his examination before trial that his move to his parents' home was temporary.

The dispositive issue with respect to Ali's domicile is his intent (*see Matter of Newcomb, supra*). Ali's intent to remain in New York was apparent, both from his testimony and from his action in moving back to New York once he returned from training (*see Matter of Brunner*, 41 NY2d 917, 918 [1977]). It was his move to New Jersey that was temporary. Thus, despite his New Jersey residence at the time of the accident and his other New Jersey connections, Ali was a New York domiciliary at the time of the accident.

A finding that Ali is a New York domiciliary, however, does not resolve the matter, since Ali's domicile is not the only factor on the New Jersey side of the choice of law equation. There are other parties to this action whose domiciles cannot be ignored

(*see Roach v McGuire & Bennett*, 146 AD2d 89, 92 [1989]). The vehicle's owner, Car Rentals, is a New Jersey corporation that does business in New Jersey as Avis Rent A Car, pursuant to a license with Avis. Avis, while a Delaware corporation, has its principal place of business in New York (*see DeTellis v Avis Rent A Car Sys.*, 273 AD2d 268, 269 [2000]) and is, therefore, a New York domiciliary (*see Weisberg v Layne-New York Co.*, 132 AD2d 550, 551-552 [1987]). Nevertheless, Avis has a presence in New Jersey, through its licensee, Car Rentals. In addition, the vehicle involved in the accident here was registered, insured, and rented in New Jersey. These facts bear on the choice of law as well (*see Schultz v Boy Scouts of Am.*, *supra* at 197; *Cunningham v McNair*, 48 AD2d 546, 549 [1975]; *Diehl v Ogorewac*, 836 F Supp 88, 93-94 [ED NY 1993]; *Buglioli v Enterprise Rent-A-Car*, 811 F Supp 105 [1993], *affd* 999 F2d 536 [1993]; *White v Smith*, 398 F Supp 130 [1975]).

New Jersey's involvement in this matter is not, moreover, accidental. The record here reflects that the plaintiff and Ali made a conscious decision to rent a vehicle in New Jersey because, as the plaintiff testified in his deposition, it was less expensive to do so. Had the plaintiff and Ali thought about it, it might have occurred to them that the absence of potential vicarious liability under New Jersey law may have played a role in that cost differential. While they surely did not contemplate, as they planned their weekend trip, the vagaries of choice of law in the event of an accident, had they considered such issues at all, they would surely have anticipated that New Jersey law would apply to the liability of the New Jersey owner and lessor of the vehicle they rented. The parties' expectations, while not controlling (*see Tooker v Lopez*, *supra* at 577; *Miller v Miller*, 22 NY2d 12, 20 [1968]), are certainly relevant (*see Cooney v Osgood Mach.*, *supra* at 77-78).

Applying the *Neumeier* rules to the situation here thus presents a difficulty not contemplated by the Court of Appeals in that case—multiple parties with different domiciles. The Court of Appeals addressed this problem in *Schultz v Boy Scouts of Am.* (*supra*), applying separate choice of law analyses, and, consequently, different *Neumeier* rules, to the liability of each defendant. The situation presented in *Schultz*, however, is not analogous. There, although the plaintiff was injured by a single tortfeasor, the liability of the two defendants in issue was predicated not merely on their vicarious responsibility for the acts of the tortfeasor, but on their own separate, allegedly

negligent, acts of hiring the tortfeasor. Here, by contrast, there is no claim of negligence on the part of any party other than the defendant driver. If Car Rentals and Avis are liable at all, they are liable solely vicariously. Because the liability of all of the defendants here is thus interrelated, the application of the laws of different jurisdictions to the several defendants may lead to unanticipated complications as potentially inconsistent law is applied and, therefore, must be rejected.

Since the plaintiff, as well as Ali and Avis, are New York domiciliaries and Car Rentals is a New Jersey domiciliary, the choice of law is determined under the third *Neumeier* rule, which requires the application of the law of the Province of Quebec, the lex loci delicti, unless it can be shown that displacing that normally applicable rule " ' "will advance" the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants' " (*Schultz v Boy Scouts of Am.*, *supra* at 201, quoting *Neumeier v Kuehner*, *supra* at 128).

Here, the "relevant substantive law purposes" are in conflict in two respects. As noted initially, New York law and New Jersey law permit the recovery of noneconomic damages by a seriously-injured plaintiff; Quebec law does not (*compare* Insurance Law § 5104 [a], *and* NJ Stat Ann § 39:6A-8, *with* RSQ, ch A-25, § 83.57). Both Quebec and New York, however, impose vicarious liability on the vehicle owner, while New Jersey does not, at least in the circumstances presented here (*compare* Vehicle and Traffic Law § 388 *and Haggerty v Cedeno*, 279 NJ Super at 609, 653 AD2d at 1167, *supra*, *with* RSQ, ch A-25, § 108). Determining what "will advance" these purposes without "impairing the smooth working of the multistate system or producing great uncertainty for litigants" (*Cooney v Osgood Mach.*, *supra* at 74) requires that we "evaluate the relative interests of jurisdictions with conflicting laws and, if neither can be accommodated without substantially impairing the other, finding some other sound basis for resolving the impasse" (*id.* at 75).

This analysis precludes the application of Quebec's ban on the recovery of noneconomic damages here. Other than the occurrence of the accident in Quebec, there are no relevant contacts between this controversy and that jurisdiction. There is no claim that any party to this action resides in Quebec or that any Quebec resident, or even Canadian citizen, not a party to this action, was involved in the accident. There is no claim that this action has any contact with the Province of Quebec

other than the fact that this accident occurred there. The plaintiff and Ali simply went to Quebec for the weekend. It is virtually certain that before departing neither of them contemplated the limited recovery that might be available to them under the law of that jurisdiction in the event of a mishap. Simply put, nothing could be more "adventitious" than the fact that the accident occurred in Quebec.

The Province of Quebec, moreover, has no interest in the application to this controversy of its proscription on the recovery of noneconomic damages. Quebec's restriction on recovery arises out of its comprehensive automobile injury compensation scheme, a part of its national health insurance program, under which every Quebec driver receives compensation for lost income and medical expenses, as well as up to $20,000 (in Canadian dollars) for injury, disfigurement, suffering, and loss of enjoyment (see RSQ, ch A-25, §§ 19, 44, 45). Since Quebec is not paying any benefits pursuant to its compensation scheme with respect to this accident, it has no interest in applying these restrictions to this controversy (see *Janssen v Ryder Truck Rental*, 246 AD2d 364 [1998]; *Thomas v Hanmer*, 109 AD2d 80 [1985]).

Once the application of Quebec's law on damages is rejected, the choice of law question with respect to that issue is simple. Since New York law and New Jersey law both permit recovery of noneconomic damages in cases of serious injury, there is no conflict with respect to recovery for noneconomic loss and, consequently, no choice of law issue to be decided with respect thereto (see *Elson v Defren*, 283 AD2d 109, 114-115 [2001]; see also *Diehl v Ogorewac, supra* at 93).

The issue of vicarious liability is more complicated. The conflict with respect to this issue is between the law of New York, which imposes vicarious liability on the owners of all vehicles that are operated in the State of New York, and the law of both Quebec and New Jersey, neither of which would, in the circumstances presented here, impose liability on Car Rentals or Avis. Before reaching the choice of law question, however, it is necessary to determine whether New York's vicarious liability statute even applies to this Quebec accident in a New Jersey vehicle. If it does not, there is no conflict to be resolved with respect to vicarious liability.

New York's vicarious liability statute, Vehicle and Traffic Law § 388 (1), provides that "[e]very owner of a vehicle used or operated in this state shall be liable and responsible for death

or injuries . . . resulting from negligence in the use or operation of such vehicle . . . by any person using or operating the same with the permission, express or implied, of such owner." The effect of this provision is not limited to accidents occurring in New York (*see Cunningham v McNair, supra* at 549). Rather, although "the vicarious liability imposed by section 388 (1) does not extend to owners of vehicles that have never been registered, used, operated or intended for use within this State" (*Fried v Seippel*, 80 NY2d 32, 40 [1992]; *see Ashkenazi v Hertz Rent A Car*, 18 AD3d 584 [2005]; *Darby v Avis Rent A Car Sys.*, 289 AD2d 191, 192 [2001]; *Klippel v U-Haul Co. of Northeastern Mich.*, 759 F2d 1176, 1180 [4th Cir 1985]), its obligations apply to any vehicle that is driven in New York (*see Matter of Sentry Ins. Co. [Amsel]*, 36 NY2d 291, 295 [1975]; *Farber v Smolack*, 20 NY2d 198, 203-204 [1967]; *Cunningham v McNair, supra* at 549; *Budget Rent-A-Car Sys., Inc. v Chappell*, 407 F3d 166, 170-174 [3d Cir 2005], *cert denied,* — US —, 126 S Ct 567 [2005]; *Johnson v Hertz Corp.*, 315 F Supp 302, 304 [SD NY 1970]).

Under *Fried* and *Farber*, the law in New York is thus that prior use of a vehicle to any degree within the state is sufficient to establish the applicability of Vehicle and Traffic Law § 388 (*see Budget Rent-A-Car Sys., Inc. v Chappell, supra* at 170-174). In those cases where the application of section 388 has been rejected, the vehicle has never been driven in New York (*see Fried v Seippel, supra; Darby v Avis Rent A Car Sys., supra; Ashkenazi v Hertz Rent A Car, supra; Coleman v Alamo Rent-A-Car*, 242 AD2d 256 [1997]; *Klippel v U-Haul Co. of Northeastern Mich., supra*). Where the vehicle is registered in New York or there has been some operation in this state, the application of the statute has been upheld (*see Farber v Smolack, supra; Cunningham v McNair, supra; Budget Rent-A-Car Sys., Inc. v Chappell, supra; Heisler v Toyota Motor Credit Corp., supra; Johnson v Hertz Corp., supra*).

Here, the vehicle in which the plaintiff was injured was registered, insured, and rented in New Jersey. While there is no direct evidence in the record to establish whether it was "used or operated" in New York, geographical realities cannot be ignored. There is no other practical way to drive from New Jersey, where the vehicle was rented by Ali, to Connecticut, where Ali picked up the plaintiff. Thus, although the issue is not free from doubt, it appears that Vehicle and Traffic Law § 388 is implicated here. The question, then, returns to whether under the applicable choice of law rules that provision governs the result.

Unlike the situation presented with respect to Quebec's ban on noneconomic damages, it does not appear that Quebec's law with respect to vicarious liability is an integral part of any larger governmental policy that would have no application to foreign domiciliaries. Since none of the parties are domiciled in Quebec, and the vehicle was not registered, insured, or rented in Quebec, however, Quebec's interest in enforcing its rule in these circumstances is limited. Moreover, under New York's choice of law regime, rules regarding vicarious liability are viewed as "loss-allocating," rather than "conduct-regulating" (*Schultz v Boy Scouts of Am.*, *supra* at 200; *see Janssen v Ryder Truck Rental*, *supra*; *Aboud v Budget Rent A Car Corp.*, *supra*; *Heisler v Toyota Motor Credit Corp.*, *supra* at 131). In this context, therefore, it would be inappropriate to place any significance on Quebec's interest in the enforcement of this rule for the purpose of regulating conduct. Thus, although Quebec's interest in the application of its vicarious liability rule here is not nonexistent, it cannot be said to be substantial.

New York, by contrast, has a strong interest in requiring financial security with respect to vehicles that are subject to New York law (*see Tooker v Lopez*, *supra* at 576-577; *Vasquez v Christian Herald Assn.*, 186 AD2d 467, 468 [1992]). The policy is longstanding. Although New York originally adhered to the common-law rule that allows for vicarious liability only for the acts of agents or employees, which is still the law of New Jersey, that law was changed by statute in 1924 (*see* former Highway Law § 282-e, recodified as Vehicle and Traffic Law former § 59, now Vehicle and Traffic Law § 388 [1]). The intent of the New York State Legislature in adopting this provision was "to assure injured plaintiffs that there will be a financially responsible party to provide compensation for negligent driving" (*Tikhonova v Ford Motor Co.*, 4 NY3d 621, 624 [2005]; *see Continental Auto Lease Corp. v Campbell*, 19 NY2d 350, 352 [1967]; *Morris v Snappy Car Rental*, 84 NY2d 21, 27 [1994]; *Plath v Justus*, 28 NY2d 16, 20 [1971]). The importance that the Legislature attached to this policy is apparent both from the stated legislative purpose (*see* Vehicle and Traffic Law § 310 [2]) and the fact that the vehicle owner is prohibited from contracting away its vicarious liability (*see Motor Veh. Acc. Indem. Corp. v Continental Natl. Am. Group Co.*, 35 NY2d 260, 264-265 [1974]; *Davis v Hall*, 233 AD2d 906, 907 [1996]).

New Jersey takes a different approach to the vicarious liability of vehicle owners, adhering to the common-law rule that

a vehicle owner is vicariously liable for the negligence of the operator only where there is an agency relationship upon which that liability can be predicated. "New Jersey's common law rule regarding owner liability . . . is designed to shield an owner from liability in cases in which the owner has not been negligent and in which the culpable driver is not related to the owner in a way that will justify the imposition of vicarious liability under traditional principles of the law of agency or master servant. That shield is consistent with the principle that tort liability in the context of automobile-related personal injuries is based on fault" (*Haggerty v Cedeno*, 279 NJ Super at 611-612, 653 A2d at 1169, *supra*). That is, in fact, the approach taken by most of the nation (*see* Rojc and Stendahl, *Vicarious Liability of Motor Vehicle Lessors*, 59 Bus Law 1161, 1164 [2004]). It is New York that is unique in imposing such unqualified liability on the vehicle owner (*see* Steinberg, *Vicarious Liability of Motor Vehicle Owners under V&TL § 388 is Extensively Litigated*, 70 NY St BJ 36 [Dec. 1998]).

New Jersey's interest in the application of its law here is premised upon the fact that the vehicle involved in the accident is owned by its domiciliary, Car Rentals, and is registered, insured, and rented in New Jersey (*see Haggerty v Cedeno, supra*). New Jersey clearly has a legitimate and substantial interest in protecting its domiciliary from what it regards as an unwarranted extension of vicarious liability (*see Klippel v U-Haul Co. of Northeastern Mich., supra* at 1182; *Aboud v Budget Rent A Car Corp., supra* at 182). Although New Jersey courts have deferred to the application of New York's vicarious liability statute in cases involving rental vehicles (*see Fu v Fu,* 160 NJ 108, 133, 733 A2d 1133, 1146-1147 [1999]; *Haggerty v Cedeno,* 279 NJ Super at 609, 653 A2d at 1167), the situations in which they have done so did not involve the potential liability of a New Jersey domiciliary.

As noted above, the applicable *Neumeier* principle requires that we disregard the law of the jurisdiction where the accident occurred where doing so "will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants" (*Neumeier, supra* at 128). The intent of the rule is to further, on some "sound basis" (*Cooney v Osgood Mach., supra* at 75), the application of the "the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation" (*Babcock v Jackson, supra* at 481).

For the reasons that have been discussed, there is a "sound basis" for rejecting the application of the law of Quebec here. The parties have no contacts with that jurisdiction, other than the purely adventitious fact that the accident occurred there, and Quebec has no interest in the application of its law to this dispute. Although New York claims more contacts with the parties than does Quebec, including the domicile of both the plaintiff and the defendant driver, New Jersey is, nonetheless, the domicile of Car Rentals, the party whose liability is primarily in issue here,[3] as well as the jurisdiction in which the vehicle was rented and with which the defendant driver Ali, although domiciled elsewhere, has significant contacts.

In these circumstances, the New Jersey contacts predominate. Moreover, in a situation as closely balanced as this, New York's unique vicarious liability policy cannot be preferred to the more limited policy adopted by New Jersey and most of the rest of the nation "without impairing the smooth working of the multistate system" (*Neumeier, supra* at 128). Thus, despite the strength of New York's policy in favor of protecting New York accident victims, that policy must yield to New Jersey's countervailing interest in protecting its domiciliary, the vehicle owner, from vicarious liability that it deems to be unwarranted. The result consistent with *Babcock, Neumeier,* and *Cooney* is, therefore, the application of New Jersey law.

Accordingly, the cross motion of Car Rentals and Avis dismissing the complaint insofar as asserted against them was thus properly granted on the ground that no vicarious li-

---

**3.** Once the law of Quebec is rejected, Ali's liability is not affected by the choice between New York law and New Jersey law since, unlike Quebec, neither jurisdiction precludes the recovery of noneconomic damages, which was the basis of Ali's cross motion for summary judgment dismissing the complaint. Although Avis's argument for summary judgment was predicated on the absence of vicarious liability under New Jersey law, and the presence of Avis in this litigation has some bearing on the choice of law issues, its impact is minimal since even if New York law were to be applied, Avis would nonetheless be entitled to summary judgment dismissing the complaint insofar as asserted against it. The potential liability of Avis is predicated solely upon its status as the licensor of Car Rentals, the vehicle owner. Vehicle and Traffic Law § 388, however, does not impose liability on the licensor of the vehicle owner (*see Ashkenazi v Hertz Rent A Car*, 18 AD3d 584 [2005]). Despite the plaintiff's attempts to argue that some other entity is involved, on the basis of the rental agreement, which makes no mention of Car Rentals and identifies "S N M Rentals" as the "Avis System Licensee," there is no dispute that Car Rentals owns the vehicle that was involved in the accident and that Avis's connection to this matter is solely the result of its status as Car Rentals' licensor.

ability applies under the law of New Jersey. Ali's motion, however, which was granted on the basis of the application of Quebec law prohibiting the recovery of noneconomic damages, should have been denied, since New Jersey law imposes no such prohibition.

The plaintiff's motion for summary judgment on the issue of liability should nevertheless be denied on the merits. The plaintiff was injured when the vehicle driven by Ali, in which the plaintiff was riding, left the roadway. The plaintiff and Ali both testified at their examinations before trial that the vehicle was traveling between 30 and 40 miles per hour, and the plaintiff admitted that Ali was not driving in an erratic manner. Ali testified that his headlights and windshield wipers were on at the time of the accident and that he had both hands on the steering wheel when, immediately before the accident, he "tapped" on the brakes to slow the vehicle down. The plaintiff testified, by contrast, that Ali "slammed" on the brakes.

On this record, the plaintiff failed to establish his prima facie entitlement to judgment as a matter of law, as he was required to do in order to prevail on his motion for summary judgment (*see Alvarez v Prospect Hosp.*, 68 NY2d 320 [1986]). "Evidence of skidding out of control is only prima facie evidence of negligence on the part of the driver, it does not mandate a finding of negligence. Such evidence, together with the explanation given by the driver, presents factual questions for determination by the jury" (*Copeman v Moran*, 236 AD2d 507, 508 [1997]; *see Donitz v Mui*, 247 AD2d 508 [1998]; *Zimmermann v Spaziante*, 143 AD2d 745 [1988]; *Vadala v Carroll*, 91 AD2d 865 [1982], *affd* 59 NY2d 751 [1983]).

Accordingly, the order is modified, on the law, by deleting the provision thereof granting Ali's cross motion for summary judgment dismissing the complaint insofar as asserted against him and substituting therefor a provision denying that cross motion; as so modified, the order is affirmed, and the complaint is reinstated insofar as asserted against Ali.

PRUDENTI, P.J., MILLER and LIFSON, JJ., concur.

Ordered that the order is modified, on the law, by deleting the provision thereof granting the cross motion of the defendant Syed Ali for summary judgment dismissing the complaint insofar as asserted against him and substituting therefor a provision denying that cross motion; as so modified, the order is af-

firmed, with one bill of costs to the defendants Car Rentals, Inc., and Avis Rent A Car payable by the plaintiff and one bill of costs to the plaintiff payable by the defendant Syed Ali, and the complaint is reinstated insofar as asserted against the defendant Syed Ali.