[918 NYS2d 120]

Frederick J. Shaw, Respondent, v Carolina Coach, Individually and Doing Business as Carolina Trailways, et al., Appellants, and Estate of Lillian Brown, Deceased, Respondent.

Second Department, March 1, 2011

---

### APPEARANCES OF COUNSEL

*Fabiani Cohen & Hall, LLP*, New York City (*Michele V. Ficarra* of counsel), for appellants.

*The Cochran Firm*, New York City (*Paul A. Marber* and *Gerard A. Lucciola* of counsel), for Frederick J. Shaw, respondent.

*Epstein Harms & McDonald*, New York City (*Michael A. Buffa* and *Bruce Roth* of counsel), for Estate of Lillian Brown, respondent.

### OPINION OF THE COURT

Skelos, J.P.

The question presented on this appeal is which state's law regarding the issue of joint and several liability—that of New York or that of New Jersey—applies to the plaintiff's New York action to recover damages for personal injuries insofar as asserted against certain defendants who are neither domiciled in New York nor in New Jersey.

The plaintiff, a New York resident, allegedly was seriously injured when the car in which he was a passenger, and which was operated by his late mother, Lillian Brown, also a New York resident, collided with a bus allegedly owned by the defendants Carolina Coach, individually and doing business as Carolina Trailways (hereinafter Carolina Coach), and Greyhound Lines, Inc., individually and doing business as Carolina Coach (hereinafter Greyhound). The bus was operated by the defendant Edward Smith, Jr., within the scope of his employment with

Greyhound. The accident occurred in New Jersey. Greyhound allegedly was incorporated in Delaware and had its principal place of business in Texas. Carolina Coach allegedly was domiciled in North Carolina. Smith was a resident of Maryland.

After commencement of this action against Carolina Coach, Greyhound, and Smith (hereinafter the appellants) and Brown's estate (hereinafter the Estate), the appellants moved, inter alia, to apply New Jersey law, specifically, New Jersey Statutes Annotated § 2A:15-5.3, to the action. According to that statute, a plaintiff may recover the full amount of his or her damages from any party determined to be 60% or more at fault in the happening of the accident, while a party found to be less than 60% at fault is only responsible for its proportionate share of the damages (see NJ Stat Ann § 2A:15-5.3). The plaintiff and the Estate opposed the motion, arguing that New York law on the issue of joint and several liability was applicable. In contrast to the law of New Jersey, under New York law, a party "held liable by reason of his use, operation, or ownership of a motor vehicle" is exempt from the limited liability provisions of CPLR article 16, and thus can be held responsible for the full amount of the plaintiff's damages without regard to its percentage of fault (CPLR 1602 [6]). The Supreme Court, agreeing with the plaintiff and the Estate, held that New York law governed the issue of joint and several liability.[1]

Resolution of the question presented on this appeal is dictated by New York's choice-of-law principles (see Tanges v Heidelberg N. Am., 93 NY2d 48 [1999]; Padula v Lilarn Props. Corp., 84 NY2d 519, 521 [1994]). The "historical approach[ ]" to choice-of-law questions arising in tort cases in this state was to invariably apply the law of the place where the tort occurred to all substantive issues arising from the occurrence (Matter of Allstate Ins. Co. [Stolarz—New Jersey Mfrs. Ins. Co.], 81 NY2d 219, 225 [1993]; see Cooney v Osgood Mach., 81 NY2d 66, 71-72 [1993]; Babcock v Jackson, 12 NY2d 473, 477 [1963]). "[D]espite the advantages of certainty, ease of application and predictability" which that rule afforded, the Court of Appeals long ago

---

1. While the plaintiff takes issue with the quality of the proof submitted by Greyhound and Carolina Coach as to the location of their domiciles, the plaintiff admitted that these parties were "foreign corporations," that is, corporations not domiciled in New York, and neither the plaintiff nor the corporations contend that the corporations are domiciled in New Jersey. Therefore, because no party seeks to apply the law of any state other than New York and New Jersey, contrary to the plaintiff's contention, the proof was sufficient to allow the Supreme Court to decide the appellants' motion.

rejected this approach, largely because it failed to take any account of the underlying purposes of the conflicting laws, and the corresponding interests possessed by other relevant jurisdictions (*Babcock*, 12 NY2d at 478, 481; *see Miller v Miller*, 22 NY2d 12, 15 [1968]). The traditional rule has therefore been replaced by a more flexible "interest analysis," under which "the law of the jurisdiction having the greatest interest in resolving the particular issue" is given controlling effect (*Cooney*, 81 NY2d at 72; *see Schultz v Boy Scouts of Am.*, 65 NY2d 189, 196-197 [1985]; *Padula*, 84 NY2d at 521; *Babcock*, 12 NY2d at 481).

In applying the interest analysis, a "distinction [is made] between laws that regulate primary conduct (such as standards of care) and those that allocate losses after the tort occurs" (*Cooney*, 81 NY2d at 72; *see Padula*, 84 NY2d at 521; *DeMasi v Rogers*, 34 AD3d 720 [2006]; *King v Car Rentals, Inc.*, 29 AD3d 205, 209 [2006]). If the conflicting laws regulate conduct, the law of the place of the tort "almost invariably obtains" because "that jurisdiction has the greatest interest in regulating behavior within its borders" (*Cooney*, 81 NY2d at 74, 72). If, as in the present case, "competing 'postevent remedial rules' are at stake other factors are taken into consideration," principal among which is the location of the parties' domiciles (*id.* at 72).

In weighing the relevant considerations where conflicting loss-allocating laws are implicated, the courts are guided by a series of principles set forth in *Neumeier v Kuehner* (31 NY2d 121 [1972]; *see Cooney*, 81 NY2d at 73; *King*, 29 AD3d 205). The first *Neumeier* principle pertains where the parties share a common domicile, and provides that the law of the parties' domicile controls in that instance (*see Cooney*, 81 NY2d at 73; *Neumeier*, 31 NY2d at 128). Here, the plaintiff and the appellants do not share a common domicile.[2] The second *Neumeier* principle oper-

---

2. The plaintiff and the Estate, however, are both domiciled in New York. Although the Court of Appeals has applied different *Neumeier* principles to different defendants in performing a choice-of-law analysis (*see Schultz*, 65 NY2d at 194; *see also Butler v Stagecoach Group, PLC*, 72 AD3d 1581 [2010], *lv granted* 75 AD3d 1115 [2010]), this Court has recognized that circumstances exist in which "the application of the laws of different jurisdictions to the several defendants may lead to unanticipated complications as potentially inconsistent law is applied and, therefore, must be rejected" (*King*, 29 AD3d at 213). We need not address the propriety of applying different *Neumeier* principles, or of applying the laws of different jurisdictions, to these parties because the Estate, the party with whom the plaintiff shares a domicile, does not raise a choice-of-law issue as between it and the plaintiff, and, also because,

ates to protect a defendant from exposure to liability under the law of the plaintiff's domicile where the conduct occurred in the defendant's state of domicile, and conversely, to prevent an out-of-state defendant from avoiding liability imposed under the laws of the plaintiff's state of domicile where the injury occurred in that state (*see Cooney*, 81 NY2d at 73; *Neumeier*, 31 NY2d at 128). This principle is not applicable in the instant case because the appellants do not seek to apply the law of their domiciles, and the conduct and injury did not occur in the state of any party's domicile. Accordingly, as all of the parties to this appeal correctly acknowledge, the question presented in this case is governed by the third *Neumeier* principle, which is applicable to split domicile cases not within the purview of the second rule. This principle provides:

> " 'Normally, the applicable rule of decision will be that of the state where the accident occurred but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants' " (*Neumeier*, 31 NY2d at 128, quoting *Tooker v Lopez*, 24 NY2d 569, 585 [1969]; *see Cooney*, 81 NY2d at 74).

The appellants contend that, under this principle, New Jersey law must be applied because there are no "special circumstances" which would require displacement of the default, lex loci delicti rule. While the appellants, focusing on the phrase "special circumstances" in this Court's decision in *Reale v Herco, Inc.* (183 AD2d 163, 169 [1992]), essentially characterize the third *Neumeier* principle as imposing merely a "special circumstances" test, that approach oversimplifies the analysis, and this Court's decision in *Reale*. In applying the third *Neumeier* principle, this and other courts, in decisions including *Reale*, have analyzed the purposes of each state's rule, and, taking into account the workings of the multistate system and the need for certainty, have determined whether, in light of those purposes, the interest of the state in which the tort occurred was outweighed by the interest of another affected state (usually, the domicile state of one party) (*see Schultz*, 65 NY2d at 201-202; *King*, 29 AD3d 205; *Reale*, 183 AD2d at 169-171). Indeed while the *Neumeier* principles provide a framework for applying

as discussed below, we conclude that New York law is applicable to the appellants under the third *Neumeier* principle.

choice-of-law principles, the overarching inquiry is "which of two competing jurisdictions has the greater interest in having its law applied in the litigation" (*Padula*, 84 NY2d at 521).

Thus, the analysis begins with an examination of the purposes of the relevant conflicting laws. In New York, under the common law, tortfeasors were jointly and severally liable, allowing a plaintiff to recover the entire amount of damages awarded to him or her from any one of the joint tortfeasors (*see Siler v 146 Montague Assoc.*, 228 AD2d 33, 37 [1997]; *Musco v Conte*, 22 AD2d 121 [1964]). CPLR article 16 was enacted to modify the common-law rule. It was "the product of a painstaking balance of interests," which "included, among many others, the burdens to be imposed on innocent plaintiffs as well as a concern that defendants at fault to a small degree were consistently paying a disproportionate share of damages awards" (*Morales v County of Nassau*, 94 NY2d 218, 224 [1999]; *see Chianese v Meier*, 285 AD2d 315, 322 [2001], *mod* 98 NY2d 270 [2002]). In order to "remedy the inequities created by joint and several liability on low-fault, 'deep pocket' defendants" (*Chianese v Meier*, 285 AD2d at 322 [some internal quotation marks omitted]), as well as its adverse affect on the "availability and affordability of liability insurance" (*Morales*, 94 NY2d at 225), CPLR 1601 "limits a joint tortfeasor's liability for noneconomic losses to its proportionate share, provided that it is 50% or less at fault" (*Rangolan v County of Nassau*, 96 NY2d 42, 46 [2001]; *see* CPLR 1601). In consideration of the "burdens to be imposed on innocent plaintiffs" (*Morales*, 94 NY2d at 224), however, the Legislature also provided a number of exemptions to this limited-liability rule. As relevant here, CPLR 1601 does "not apply to any person held liable by reason of his use, operation, or ownership of a motor vehicle or motorcycle" (CPLR 1602 [6]). This exemption reflects the Legislature's deliberate choice that the policy underlying the common-law joint and several liability rule—"the sense that compensation of the relatively innocent victim serves a more important purpose than striking a nuanced balance between and among the relatively guilty"— should continue to apply to the majority of automobile accident victims in order to ensure that they obtain a full recovery (*Siler*, 228 AD2d at 40; *see* Governor's Approval Mem, Bill Jacket, L 1986, ch 682, reprinted in 1986 NY Legis Ann, at 289 ["The crafting of these exceptions . . . reflects careful deliberations over the appropriate situations for a modified joint and several liability rule"]).

The New Jersey limited-liability statute similarly seeks to balance the interest of providing redress to plaintiffs with the interest of promoting "fairness to joint tortfeasors" (*Erny v Estate of Merola*, 171 NJ 86, 105, 792 A2d 1208, 1219 [2002]). Thus, it limits the liability of tortfeasors found to be less than 60% at fault to their proportionate share of the damages awarded (171 NJ at 100, 792 A2d at 1216; *see* NJ Stat Ann § 2A:15-5.3). Like the New York Legislature, "the [New Jersey] Legislature limited the liability of joint tortfeasors to address concerns about both the rising cost of insurance and increasing litigation" (*Erny*, 171 NJ at 105, 792 A2d at 1219). Indeed, the New Jersey limited-liability statute initially permitted a plaintiff to recover economic damages from any tortfeasor who was more than 20% at fault, while permitting the recovery of noneconomic damages only from a tortfeasor who was more than 60% at fault (*see* 1995 NJ Session Law Serv ch 140, codifying Senate Bill No. 1494; *Erny*, 171 NJ at 105, 792 A2d at 1219). A 1995 amendment to the statute, which eliminated the provision imposing joint liability for economic damages on tortfeasors more than 20% at fault, reflected "the State's monitoring of escalating insurance and litigation costs and its [continued] attempt to moderate those costs" (*Erny*, 171 NJ at 107-108, 792 A2d at 1220). As expressed by the Sponsor Statement to the 1995 amendment:

> " 'This Bill is intended to reduce the cost of general liability insurance for everyone by eliminating the so called 'deep pocket' [defendant] . . . Under present law, any person who is determined to be more than 20% at fault in any action may end up paying damages beyond his actual share of liability as determined by his degree of fault; this means that an insurance company must base its liability premiums upon a worse-case scenario (i.e. that the defendant would be called upon to contribute the entire judgment if other defendants do not have sufficient resources)' " (*Erny*, 171 NJ at 105-106, 792 A2d at 1219, quoting Sponsor Statement to Senate Bill No. 1494 [Oct. 3, 1994]).

Significantly, unlike the New York Legislature, which assigned greater weight to the protection of a motor vehicle accident victim's right to full recovery than to the escalating costs of liability insurance, the New Jersey Legislature did not provide an exemption from its limited-liability provision for victims of car

accidents (*see* NJ Stat Ann § 2A:15-5.3; *Erny*, 171 NJ at 105, 792 A2d at 1219). This reflects a policy choice on the part of the New Jersey Legislature that permitting joint liability where a tortfeasor is 60% or more at fault strikes the proper balance between the interests of all plaintiffs, including those injured in motor vehicle accidents, and concerns regarding the high costs of liability insurance and increased litigation.

Having examined the policies underlying the relevant conflicting laws, we must now consider whether, in light of these competing policies, displacing New Jersey law would "advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants" (*Neumeier*, 31 NY2d at 128 [internal quotation marks omitted]; *Cooney*, 81 NY2d at 74; *King*, 29 AD3d at 217). Applying New York law to this controversy would advance the substantive law purposes of this state's law because it would insure that the plaintiff, the "relatively innocent victim," is fully compensated (*Siler*, 228 AD2d at 40 [internal quotation marks omitted]). As aptly observed by the United States Court of Appeals for the Second Circuit, "[w]hen the extent of victim compensation is at issue, the *plaintiff's* domicile has an interest in applying its law because that forum is where the loss is felt and where the burden of the victim's uncompensated needs may fall" (*Sheldon v PHH Corp.*, 135 F3d 848, 853 [1998]). In contrast, application of New Jersey's limited-liability statute would not advance that state's purposes of reducing liability insurance because none of the vehicles involved in this accident were insured in that state. Nor would implementing New Jersey law further that state's policy of reducing litigation because New York is the forum state for this lawsuit. While application of New Jersey law would advance that state's purpose of promoting fairness to joint tortfeasors, and thus, its interest in this litigation "is not nonexistent," inasmuch as none of the tortfeasors are New Jersey residents, New Jersey's interest "cannot be said to be substantial" in that regard (*King*, 29 AD3d at 216). Rather, whereas New Jersey's only connection to this lawsuit is the adventitious happening of the accident in that state, its interest in enforcing its loss-allocating limited-liability statute is correspondingly circumscribed (*see Babcock*, 12 NY2d at 483 [declining to apply the law of Ontario, the place of the tort, where Ontario's only connection to the lawsuit was the "fortuitous" occurrence of the accident there]; *King*, 29 AD3d at 213-214).

Applying New York's joint and several liability law to this action also would not impair the smooth workings of the multistate system or create great uncertainty for litigants. The appellants' argument in this regard—that they could not have expected that "operating a bus in the State of New Jersey" would expose them to New York's joint and several liability law—is unpersuasive. Initially, as the appellants acknowledge, where loss allocating rules are concerned "party reliance [is] less important" (*Schultz*, 65 NY2d at 198) than when rules regarding standards of conduct are involved. In any event, the evidence demonstrates that the appellants were operating a bus between New York and New Jersey (or between New York and Maryland with a stop in New Jersey). Thus, having no other connection to New Jersey, the appellants cannot, and do not, contend that they took any particular actions, or structured their business relationships, in reliance upon the application of New Jersey law. Indeed, the appellants could not have relied on any expectation that New Jersey law would apply because any such "expectation" (*Reale*, 183 AD2d at 169) only arose after the accident occurred, due to the chance fact that the accident occurred in New Jersey (*cf. Reale*, 183 AD2d at 169 [Pennsylvania had a significant interest in protecting the reasonable expectations of the defendant, an owner of a camp located in that state, with respect to its duties and obligations toward visitors]).

Finally, while the appellants assert that applying New York law in this case will suggest that New York favors its own residents, the Supreme Court of New Jersey, utilizing a nearly identical choice-of-law interest analysis as that employed in New York, has applied New York's joint and several liability rule to a case brought by a New Jersey resident plaintiff against two New York defendants for an accident occurring in New Jersey (*Erny*, 171 NJ at 103, 792 A2d at 1218). The New Jersey court itself concluded that, because the cars driven by the defendants were registered and insured in New York, application of New Jersey's limited-liability statute "would not further New Jersey's interest in reducing liability insurance rates" (171 NJ at 108, 792 A2d at 1221). The court reasoned that, while the application of CPLR 1602 (6) would not frustrate New Jersey's policies, applying the New Jersey statute would frustrate New York's "strong policy of compensation in automobile accident cases" (*id.*).

We find this reasoning persuasive, and for all of the reasons herein stated, we conclude that the law of New Jersey—the law

of the place of the tort—should yield in this case to the law of New York—"the law of the jurisdiction having the greatest interest in resolving the particular issue" (*Cooney*, 81 NY2d at 72; *see Schultz*, 65 NY2d at 204-205; *Babcock*, 12 NY2d at 483; *King*, 29 AD3d at 209-210). Accordingly, the order is affirmed insofar as appealed from.

DICKERSON, ENG and LOTT, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with one bill of costs.